## BLAKE *v.* BLACK *et al.*

1. The chancellor had jurisdiction and power, under section 4214 of the code, to entertain the petition of the executrix and decree at chambers a sale of the land, the fair import of the facts as they were presented to the chancellor, and as to which there was no issue, being that it had become impossible to carry out the will of the testator, and there being representation of the minors by a guardian *ad litem*, and all the parties in interest consenting in writing for a decree of sale to be rendered. Possibly the jurisdiction might also be rested upon section 2327, construed in the light of sections 4221 to 4223, executors being trustees and, as such, having title to devised realty for the purpose of using the same, or the proceeds of the same, to pay debts and legacies.

2. The question whether some of the original plaintiffs could recover unless all could, may be obviated on a future trial by amending the declaration so as to allege a several as well as a joint title, the title of tenants in common being technically several rather than joint.

February 24, 1890.

Jurisdiction. Sales. Wills. Minors. Trusts. Title. Amendment. Tenants in common. Practice. Before

Judge BOYNTON. Rockdale superior court. February term, 1889.

On January 26, 1885, Jennie A. Black, Elizabeth Laird, Mary A. Cowan, Joanna Sanders and Georgia Bailey, (children of Claiborn W. Bailey, deceased,) and Leila Ficquett (formerly the wife of David C. Bailey, a son of Claiborn W. Bailey), and David C. Bailey, Jr., and Annie May Bailey (minor children of David C. Bailey, deceased, and Leila Bailey, now Leila Ficquett), the minors suing by next friend, brought complaint against Blake, for 230 acres of land ; reciting, as their abstract of title, a deed from Thos. P. Born to Claiborn W. Bailey, dated February 10, 1863, conveying the land sued for in consideration of $1,550, and the will of Claiborn W. Bailey, dated February 20, 1864, appointing his wife, Mary Jane, to be his executrix, and providing that she should carry out this will by managing in such manner as he would, and that his sons, John W. and David C. Bailey, should each have a horse and saddle when they were of age, and his five daughters, when they came of age, each have a bed and furniture and a cow, "and the balance not willed by me in the schedule above to be equally divided among all my children and my wife"; this will having been probated in common form on March 30, 1864, and admitted to record. The plaintiffs alleged that "they are the children, grandchildren, the legatees and devisees of the said Claiborn W. as mentioned and embraced in said will"; that the testator died owing no debts; that Mary Jane Bailey soon afterwards qualified as executrix, possessed herself of the deceased's personal property and of the land sued for, controlled the land as executrix for a number of years, and then made a pretended private sale of the same, without authority under the will or order from the proper court, and contrary to law, thereby depriving herself of the possession and control ; and that she refuses to recover the same, etc.

The defendant pleaded, *inter alia*, not guilty; and that the plaintiffs joined in an application for sale with their mother, Mary J. Bailey, executrix of C. W. Bailey, and the land was sold, and a part ($850) of the proceeds was reinvested on January 8, 1873, in plaintiffs' behalf, in the land (75 acres) on which Mary J. Bailey resides, which sale and investment have been ratified by the plaintiffs.

Upon the first trial, the verdict, was for Jennie A. Black, Elizabeth Laird, Mary A. Cowan, Joanna Sanders and Georgia Bailey, each one ninth undivided interest in the land sued for; and against the two minor plaintiffs. On a second trial, the jury found "for the plaintiffs five ninths of land in controversy." In the court's charge the jury were instructed that the widow of D. C. Bailey, and the two minors by their next friend, were parties plaintiff when the suit was commenced, but were no longer so and not to be so regarded.

In evidence appeared the following: The will of Claiborn W. Bailey, already fully set forth. The petition of Mary J. Bailey, reciting that under the will she is trustee for Jane A. Barnes, Francis M. Bailey, Elizabeth C. Laird, John W. Bailey, Mary C. Cowan, Georgia A. Bailey, David C. Bailey and Joanna I. Bailey, children of Claiborn W. Bailey; and is about to make an application for leave to sell the land left by testator " to herself during her natural life, and at her death or intermarriage to her children "; and that Georgia A., David C. and Joanna I. Bailey are minors; and praying that John W. Bailey be appointed guardian *ad litem* to represent them in this application. This prayer was granted at chambers February 12, 1872. On October 25, 1872, the appointment was accepted by John W. Bailey. On the same day, he acknowledged service as such, and for himself together with Jane A. Barnes, F. M. Bailey, E. C. Laird and Mary A. Cowan, of the peti-

tion of Mary J. Bailey to the judge of the superior court
for leave to sell the land therein described (the land now
sued for) and to invest the proceeds in a place that
would be more conducive to the interest of the estate;
this acknowledgment stating that "we . . believe
that the interest of all concerned will be promoted by
the sale and investment as prayed for." The petition
recites that the testator left, in addition to this land,
personal property; that by the will she (Mrs. Bailey)
is made trustee for their children, and authorized to
carry out certain provisions as to certain bequests to
the children as they arrive at majority or marry; that
said property is all that belongs to the estate of testator
now in the possession of petitioner; that the land is in
large bodies and so situated that petitioner cannot cul-
tivate it in such manner as she would like for the bene-
fit of the heirs, and cannot give it her personal superin-
tendence; that some of the children have married and
others have reached their majority; and that she desires
to sell the premises at public or private sale, and to re-
invest the proceeds in a smaller place that can be man-
aged better and will yield a better income, " and to dis-
charge said debts," pay off said bequests and carry into
effect the provisions of the will. On October 31, 1872,
at chambers, the judge of the superior court passed an
order reciting that the parties interested are properly
represented before the court, and no question of fact is
for determination, and the court is satisfied that the
petition ought to be granted; and directing that Mary
J. Bailey, trustee for the children mentioned in the peti-
tion, be authorized to sell at public or private sale the
property therein described, execute titles, reinvest the
proceeds in a smaller place, " pay said debts" and carry
into effect the provisions of said will; and further direct-
ing that she make return of her actions, etc. This re-
turn was made and sworn to March 28, 1873. It states

that the land in question was sold, in November, 1872, to John Black for $2,300; that in December of that year $850 were invested in 75 acres of land and improvements, $900 paid to D. N. Baker for notes held against the estate to that amount, $35 to E. B. Rosser to satisfy a *fi. fa.* held by him against the estate, $40 to J. A. Kennedy on account against estate, $135 for a mule for the farm, $236 to legatees, and $15 for tax; and that the balance remains in the hands of Mary J. Bailey.

The deed to John W. Black, conveying the land in dispute, is from Mary J. Bailey, trustee for the children of Claiborn W. Bailey, and is dated January —, 1873. It recites the passage of the order of sale, and a consideration of $2,300 cash. On August 6, 1874, John W. Black conveyed the land to D. N. Baker by deed, for $2,450. Both of these deeds were recorded on November 2, 1885. On January 3, 1882, the wife (sole heir) and the administrator of D. N. Baker conveyed the land to the defendant by deed, for $1,250, and this deed was recorded at once. The youngest of the eight children left by Claiborn W. Bailey, Joanna Sanders, was born January 15, 1859; David C. Bailey, the next youngest, June 1, 1854; Georgia Bailey, January 9, 1851; all the rest before then.

Testimony on other features of the litigation need not here be detailed. After verdict, the defendant moved for a new trial, which was denied, and he excepted. The only grounds of the motion referred to in the decision are as follows:

Refusal to grant a nonsuit for misjoinder of plaintiffs, the children of C. W. Bailey joining with the widow and children of D. C. Bailey, the former claiming as legatees of C. W. Bailey and the latter as heirs at law of D. C. Bailey; the ruling of the court being based on the idea that the first verdict, having been

against the heirs of D. C. Bailey, eliminated them from the case. And the failure of the court in the charge to present defendant's theory that there could be no recovery by any of the plaintiffs unless the proof showed joint title.

Error in charging that the proceeding by which the order for sale was obtained, and the sale thereunder, · were void for want of jurisdiction in the judge of the superior court to grant such an order in vacation.

A. C. McCALLA and H. D. McDANIEL, for plaintiff in error.

J. N. GLENN and A. M. SPEER, *contra.*

BLECKLEY, Chief Justice.

We have read the evidence and considered it carefully, and we entertain no doubt that the court committed error in not granting a new trial, on the tenth ground of the amended motion. We shall present as briefly as may be our reasons for this opinion.

1. Upon the facts set forth in the petition of Mrs. Bailey, construed in connection with the will of the testator of which she was executrix, the chancellor had jurisdiction under section 4214 of the code, embracing the act of 1866, to decree a sale of the land and to do this in vacation. We look to the substance of the matter, and think the proceeding was not vitiated by certain obvious errors such as the misdescription of Mrs. Bailey as trustee, the will itself, which was exhibited to the chancellor, showing that she was not a trustee otherwise than by virtue of her office as executrix. She ought to have been described simply as executrix. This same mistake occurs in the deed which she afterwards made to the purchaser. But we think it affects the validity of the deed no more than it did the validity of the petition and the decree rendered thereon. All the parties were before the chancellor and consented to the decree for a sale. All of them except two were of full age,

and these two were duly represented by a guardian *ad litem* who joined in the consent. The petition, if untrue, should have been denied by the adult children for themselves, and by the guardian for the minors. If they had not intended to admit its truth, they should not have signed any instrument expressing their assent to the granting of the decree prayed for. The chancellor was fully warranted in treating the representations in the petition as absolutely true, and so treating them, they made a case of impossibility on the part of the executrix to carry out the will. The testator directed that Mrs. Bailey, his executrix, should carry out the will by managing in such manner as he might or should do, if he were personally present at the doing of the same, during her widowhood. He directed that his two sons should each have a horse and saddle when they became of age, and each of his five daughters a bed and furniture and a milch cow. The residue of his estate was to be equally divided amongst all his children and his wife. At the time the decree was applied for, some of these special legacies remained unpaid, and two of the children were not yet of age. The testator evidently contemplated that there would be means whereby to rear the children to majority and discharge the special legacies, without making sale of the land. He did not anticipate that his widow would become incapable of managing so large a place, nor did he foresee that any of the proceeds of a sale of the land would be needed either to pay debts or to provide the horses, saddles, cows, beds and furniture requisite to supply the outfit for the children as they successively arrived at majority. It turned out that a smaller establishment would be better for the widow and the minor children, and to obtain that, not only a sale was necessary, but leave to reinvest a portion of the proceeds. The ordinary could have granted leave to sell, but could not have granted

any to purchase another place. The difference in the two jurisdictions made it more appropriate to apply to the chancellor than to the ordinary; for the former could grant the full relief desired, whereas the latter could afford only partial relief. Whilst the facts of this case are quite different from those in *Sharp* v. *Findley*, 71 *Ga.* 654, we think the same principle governs in respect to the question of jurisdiction. We are inclined to think also that much of the reasoning in *Sharp* v. *Findley*, supplemented by that in *McGowan* v. *Lufburrow*, 82 *Ga.* 523, would bring this proceeding within section 2327 of the code, construed in the light of sections 4221 to 4223. Executors are trustees, and they are trustees having title to devised realty as well as to bequeathed personalty for the purpose of using the same, or the proceeds of the same, to pay debts and legacies. Both species of property are put by the statute on the same footing with respect to administration. The code, §2451, declares that all property "both real and personal, in this State, being assets to pay debts, no devise or legacy passes title until the assent of the executor is given to such devise or legacy." This shows a purpose to lodge the title in the executor so long as the property may be needed to pay debts, and we doubt not also, so long as it may be needed to pay or procure the means of paying legacies not in the residuum. *Dicta* there are in *Knapp* v. *Harris*, 60 *Ga.* 403, which seem to militate against this theory. But neither that case nor any other decided by this court, so far as we know, involved the question whether an executor was such a trustee and had such title as to be within section 2327 of the code. Nor does the present case require a direct ruling on the question, inasmuch as the decree of sale may be rested, as we have rested it, upon section 4214. There is however a case, that of *Dean* v. *Central Cotton Press Company*, 64 *Ga.* 670, which rules expressly that an executor may be authorized by a court of chancery in term

to sell realty for the purpose of paying debts and legacies, and it seems pretty clear from section 2327 that what can be done in term, where a trust title is before the court to be acted upon, may be done in vacation by complying, as to the procedure, with sections 4221, 4222, 4223 and 4224. When the order for sale was granted in *Knapp* v. *Harris* and in numerous other cases on the general subject, the code was not in force.

Our view of the law as to the jurisdiction of the chancellor to order the sale under which Blake claims title, will throw the stress of the case in a future trial upon other questions, and we deem it best to let those questions be shaped by the evidence which may be adduced on that trial. To decide them in advance would be of little or no utility, should the evidence then be materially different from what it was on the former trial. The one error assigned in the bill of exceptions is in overruling the motion for a new trial, the grounds of the assignment being those taken in the motion. We find one of these grounds sustainable, and that is enough to dispose of the present writ of error.

2. We would, however, suggest that a very troublesome *small* question might be easily set at rest by simply amending the declaration so as to allege the claim of title by the plaintiffs to be several as well as joint. The question whether some co-plaintiffs can recover unless all can, where the claim of title is laid jointly, was considered in *Echols* v. *Sparks*, 79 *Ga.* 417, and again in *De Vaughn* v. *McLeroy*, 82 *Ga.* 689. Whilst upon this subject, I will observe that I have examined the transcript of the record in the case of *Pendergrast* v. *Gullatt*, 10 *Ga.* 218, and found that the verdict was for the defendant. None of the plaintiff's lessors recovered; consequently, what was announced in that case to the effect that in ejectment by two heirs, upon a joint demise, one might recover and the other not, was *obiter*.          *Judgment reversed.*